Andrew S. Friedman (State Bar No. 005425)
Bonnett Fairbourn Friedman
 & Balint, P.C.
afriedman@bffb.com
2325 E Camelback Road, Suite 300
Phoenix, AZ 85016
Telephone: (602) 274-1100

Anne Ronan (State Bar No. 006041)
Arizona Center for Law In the
 Public Interest
aronan@aclpi.org
514 W. Roosevelt Street
Phoenix, AZ 85003
Telephone: (602) 258-8850

Attorneys for Plaintiffs and the Putative Class

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Micah Etter, M.D. and Laura Etter, individually and on behalf of their minor child, H.E., and on behalf of all others similarly situated, | Case No.: |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | |
| Banner Health, an Arizona Corporation; Banner Plan Administration, Inc., an Arizona Corporation; and Banner Health Master Health and Welfare Benefits Plan, | |
| Defendants. | |

**INTRODUCTION**

The Centers for Disease Control and Prevention ("CDC") estimate that an average of 1 in 68 children suffer from autism spectrum disorder ("ASD" or "autism"). More children are affected by autism than diabetes, AIDS, cancer, cerebral palsy, cystic fibrosis, muscular dystrophy and Down syndrome, combined.  Although incurable, children with ASD who have access to early intervention behavior therapies or applied behavioral analysis ("ABA") therapies have shown remarkable improvement in lessening the impact of some of ASD's debilitating characteristics and allowing these children the opportunity to reach their full potential and to overcome the unjustified stigma associated with mental health conditions.

In a comprehensive mental health report issued in 1999, the Surgeon General stressed that "one of the foremost contributions of contemporary mental health research is the extent to which it has mended the destructive split between 'mental' and 'physical' health."  Mental Health – A Report of the Surgeon General, preface (available at https://profiles.nlm.nih.gov/ps/access/NNBBHS.pdf (last accessed April 28, 2017)). Despite these strides, the Surgeon General recognized that the actions of the health care system as the gatekeeper with the unparalleled power to grant or deny those suffering from mental health conditions access to treatment and a potentially healthier and more fulfilling life have only served to deepen the stigmatization associated with mental health conditions:

> Stigmatization of people with mental disorders has persisted throughout history.... It deters the public from seeking, and wanting to pay for, care. In its most overt and egregious form, stigma results in outright discrimination....
>
> Explanations for stigma stem, in part, from the misguided split between mind and body first proposed by Descartes. Another source of stigma lies in the 19th-century separation of the mental health treatment system in the United States from the mainstream of health.

*Id.,* p. 6.

1

The Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA") was designed to address this coverage discrimination by prohibiting the application of special treatment limitations imposed only on mental health coverage. *Coalition for Parity v. Sebelius,* 709 F. Supp. 2d 10,13 (D.D.C. 2010). Special treatment limits imposed only on mental health services violate the heart of the MHPAEA.

Like the Surgeon General recognized, Defendants Banner Health ("Banner Health"); Banner Plan Administration, Inc., ("BPA"); and Banner Health Master Health and Welfare Benefits Plan ("Banner Plan") (collectively referred to as "Defendants" or "Banner") have and continue to perpetuate the stigma associated with mental health conditions by imposing a treatment limitation on a mental health condition – ASD – that is not imposed on medical or surgical benefits.  Defendants arbitrary refusal to provide coverage for ABA therapy, a scientifically-valid and generally-accepted treatment for autism violates the MHPAEA and the Employee Retirement Income Security Act of 1974 29 USC §1001 et seq.("ERISA").

Because they have been, and are likely to continue to be harmed by Defendants' misconduct, Plaintiffs Micah Etter, M.D. and Laura Etter, individually and on behalf of their minor child, H.E., bring this class action complaint against Defendants on behalf of themselves and all other similarly situated individuals who now subscribe, have subscribed or will subscribe to a health and welfare plan sponsored by Banner Health that contains an exclusion which as applied denied them coverage for ABA therapy for treatment of autism-related spectrum disorder.

This civil action is brought under ERISA to compel Defendants to provide certain healthcare benefits to autistic children required by law, for injunctive relief and equitable relief, and recovery of damages, costs, and attorney fees incurred because of Defendants' violations of federal law.

Upon information and belief, as well as the investigation of counsel, Plaintiffs allege that at all times material:

## SUMMARY OF PLAINTIFFS' ALLEGATIONS

1.    Micah and Laura Etter are the parents and legal guardians of their minor child H.E.  In June 2014, at the age of two, H.E. was diagnosed as suffering from autism spectrum disorder.  As part of H.E.'s treatment plan, H.E.'s physician recommended implementation of ABA therapy.  At the time of H.E.'s diagnosis, Dr. Etter was enrolled in medical school and H.E.'s health insurance benefits, including coverage for the prescribed ABA therapy, was provided through Arizona's Health Care Cost Containment System ("AHCCCS").  H.E. experienced remarkable progress with the ABA therapy.

2.    In or around June 2016, Dr. Etter began employment with Banner Health. Dr. Etter and his dependents, including H.E., became members under the Banner Health Master Health and Welfare Benefits Plan. The Banner Plan designates the BPA as the Plan Administrator who "has the sole and complete discretionary authority to control and manage the operation and administration of the Health Plans, and to construe the terms of the Health Plans, including the making of factual determinations."   Banner Health is solely and completely responsible for the payment of benefit claims made under the Banner Plan.  Banner Health also participated in the decision to design the benefits provided under the Banner Plan, including the exclusion from coverage of ABA therapy.

3.    As members of the Banner Plan, Dr. Etter on behalf of H.E. requested continued coverage for H.E.'s prescribed ABA therapy.  The Claims Administrator, Cigna Behavioral Health, Inc. ("Cigna"), denied the requested services asserting that ABA therapy was excluded from coverage under the plan as "[n]onmedical counseling or ancillary services . . . ."

4.    After denying coverage for H.E.'s ABA therapy, Dr. Etter requested a copy of the Banner Plan and was provided with a copy of a Summary Plan Description for the Choice Plus and Select $500 Medical and Prescription Drug Coverage, effective January 1, 2015 ("SPD"). According to the SPD, the Banner Plan excluded ABA therapy because it "is considered experimental or investigative."   This was echoed by a Banner Health

employee who, in advising Dr. Etter on the process for appealing a denial of benefits, explained that Banner considered ABA therapy "experimental."

5.     Dr. Etter appealed Cigna's denial to BPA, who affirmed the denial because "[p]er the SPD, Applied Behavioral Analysis is a non-covered benefit." Despite that Dr. Etter submitted detailed reasons and supporting scientific literature supporting the need for ABA therapy to treat H.E.'s autism, BPA did not address this evidence and provided no other explanation for upholding the denial of services.  Along with its decision, BPA enclosed a purported copy of the page from the SPD relied on, which differed from the SPD provided to Dr. Etter.  The single SPD page provided by BPA listed applied behavioral analysis as an excluded service without stating that it "is considered experimental or investigative."  To further obfuscate the reasoning behind the denial of coverage for ABA therapy, Banner initially denied Dr. Etter's request for an external appeal.  Under the Banner Plan, an external appeal is permitted when a denial of coverage is based on a "determination that a particular treatment is experimental or investigational."

6.     Attempting to resolve the conflict in the grounds provided for exclusion of ABA therapy, on April 15, 2017, Banner's Associate General Counsel confirmed that "the denial was based on the specific exclusion for ABA therapy, which is found on the list of Non-Covered Medical Services in Part 5 of the Banner Plan SPD, a copy of which has been provided to Dr. Etter. (The exclusion for ABA therapy is number 41 on that list.) However, the specific exclusion exists because the Banner Plan has determined that ABA therapy is experimental or investigational." ("ABA Policy")

7.     In denying coverage to H.E., Banner applied its ABA Policy mandating exclusion of ABA therapy as experimental or investigative.  In turn, Banner essentially rubber-stamped the initial denial during the perfunctory review on appeal.  Banner's denial of ABA therapy because it was experimental or investigative was arbitrary and capricious and violates the MHPAEA.  Notwithstanding Banner's wrongful denial of coverage, H.E.

4

has continued to receive the prescribed ABA therapy with tremendous results. Plaintiffs Micah and Laura Etter have paid for the treatment.

8.     ABA therapy is a scientifically valid, medically accepted, mainstream treatment that uses behavioral techniques to teach autistic children basic and complex skills that they would not otherwise be able to accomplish. There is abundant evidence demonstrating that ABA therapy is neither experimental nor investigative, but rather is an effective and generally accepted standard of medical practice for the treatment of ASD by the mental health community, federal agencies, state legislatures and regulators, judicial opinions, and scientific research:

- ABA therapy was developed in the 1970s at UCLA and has been a well-accepted form of treatment for autism for over 20 years;

- Approximately 45 states and the District of Columbia have enacted legislation mandating coverage for ABA therapy;

- Federal programs, such as Medicaid and the Federal Employee Health Benefits Program, are required to provide coverage for ABA therapy;

- Several state regulators or agencies have endorsed or mandate the use of ABA therapy to treat autism, including:

    o The New York State Department of Health Early Intervention Program recommends that ABA is an important element of any intervention program for young autistic children;

    o The California Department of Insurance has instituted enforcement actions against several insurers, including Cigna, Blue Shield of California and Health Net, finding that the insurers denial of coverage for ABA therapy as experimental violated California's mental health parity act; and

    o Michigan's Insurance Commissioner has held, based on independent medical examinations, that ABA is a reasonable, safe, and necessary treatment for children with autism;

- Courts have rejected claims that ABA therapy is experimental or investigative, see, e.g., *A.F. ex rel. Legaard v. Providence Health Plan*, 35 F.Supp.3d. 1298 (D. Or. 2014) (holding exclusion of ABA therapy as experimental or investigative was improper and amounted to an improper

"treatment limitation" in violation of Mental Health Parity Act); *McHenry v. PacificSource Health Plans*, 679 F. Supp. 2d 1226, 1232 (D. Or. 2010) (concluding, in dicta, "that the weight of the evidence demonstrates that ABA therapy is firmly supported by decades of research and application and is a well-established treatment modality of autism and other PDDs. It is not an experimental or investigational procedure"); *Potter v. Blue Cross Blue Shield of Michigan*, No. 10-CV-14981, 2013 WL 4413310, at *13 (E.D. Mich. Mar. 30, 2013) (holding that "Defendant's characterization and exclusion of ABA therapy as experimental or investigative, as applied to the claims of the class members, was, and is, arbitrary and capricious").

- A wealth of clinical studies has concluded that ABA therapy is a safe and effective treatment of ASD. *See, e.g.*, G. Dawson, et al., *A Quarter Century of Progress on the Early Detection and Treatment of Autism Spectrum Disorder*, 25 Development and Psychopathology 1455-1472 (2013); J. Ivy, et al., *The Efficacy of ABA for Individuals with Autism Across the Lifespan*, 3-1 Curr Dev Disord Rep 57 - 66 (2016); Svein Eikeseth, et al., *Outcomes for Children with Autism Who Began Intensive Behavioral Treatment Between Ages 4 and 7,* 31 Behavior Modification 264–277 (2009); Esther Ben–Itzchak, et al., *The Effects of Intellectual Functioning and Autism Severity on Outcome of Early Behavioral Intervention for Children with Autism,* 28 Research in Developmental Disabilities 297–303 (2007); Bob Remington, et al., *Early Intensive Behavioral Intervention: Outcomes for Children with Autism and their Parents After Two Years,* 112 Am. J. on Mental Retardation 418–435 (2007); Howard Cohen, et al., *Early Intensive Behavioral Treatment: Replication of the UCLA Model in a Community Setting,* 27 Developmental and Behavioral Pediatrics S145–154 (2006); Tristram Smith, et al., *Randomized Trial of Intensive Early Intervention for Children with Pervasive Developmental Disorder,* 105 Am. J. on Mental Retardation 269–285 (2000); O. Ivar Lovaas, *Behavioral Treatment and Normal Educational and Intellectual Functioning in Young Autistic Children,* 55 Journal of Consulting and Clinical Psychology 3–9 (1987); and

- Over 160 self-funded plans providing coverage for over 10 million employees and their dependents provide coverage for ABA therapy, including Fortune 500 companies, such as Walmart, Apple, Home Depot, Johnson & Johnson, as well as several respected universities and health care providers, such as Harvard University, Mayo Clinic, Cleveland Clinic, and Boston University.

9.    Against this backdrop, Defendants violated their fiduciary duties as detailed herein.  There is overwhelming support for the conclusion that ABA therapy is, a proven, efficacious treatment for ASD, and is not experimental or investigational within the

6

meaning of those terms as defined in the Banner Plan.  In developing its treatment guidelines and policies, Banner had a fiduciary duty to Plaintiffs and other members of the Banner Plan to promulgate criteria that faithfully ensure that coverage is provided for all scientifically-sound, non-experimental and generally-accepted treatment for mental health conditions.  Banner breached this duty by imposing a treatment limitation for autism through its arbitrary exclusion from coverage of ABA therapy.  ABA therapy was specifically developed for the treatment of autism and its exclusion from coverage violates the MHPAEA's prohibition against special treatment limitations only imposed on mental health conditions.

10.    Banner cannot deny that their ABA Policy, resulting denial of ABA coverage for H.E. and members of the Class, violated the terms of the relevant plans and Defendants' fiduciary obligations under ERISA.

11.    To remedy Defendants' breach of fiduciary duty and other ERISA violations, Plaintiffs bring class claims against Defendants under 29 U.S.C. § 1132(a)(1)(B), 1132(a)(3)(A), and 1132(a)(3)(B).  Through this action, Plaintiffs seek appropriate equitable and injunctive relief under ERISA to compel Defendants to change their policies and practices so as to comply with their fiduciary obligations and federal law and to make benefit determinations which are consistent with generally accepted standards.

**PARTIES**

12.    Plaintiff Micah Etter, M.D., is a resident of the State of Arizona.  At all times relevant hereto, Dr. Etter has been employed by Banner Health, and a participant under the Banner Plan within the meaning of ERISA.

13.    Plaintiff Laura Etter is a resident of the State of Arizona.  At all times relevant hereto, Laura Etter has been a dependent-beneficiary under the Banner Plan within the meaning of ERISA.

7

14.     Plaintiffs Micah and Laura Etter are the parents and legal guardians of H.E. H.E. is a minor child who suffers from a condition known as autism spectrum disorder. At all times relevant hereto, H.E. has been a dependent-beneficiary covered under the Banner Plan.

15.     As set forth herein, Defendants wrongfully refuse to provide or allow for coverage for ABA therapy, a scientifically validated and beneficial treatment for the autism from which the minor child suffers.

16.     Plaintiffs have standing to bring these claims. Defendants have denied the claim and the administrative appeal.  Plaintiffs have fully exhausted all administrative remedies and this case is ripe for adjudication.

17.     Defendant Banner Health is a non-profit corporation that is incorporated in the State of Arizona with its principle place of business located at 2901 North Central Avenue, Suite 160, Phoenix, AZ 85012.  Banner Health is the Plan Sponsor for the Banner Plan and responsible for payment or reimbursement for medical/surgical benefits and mental health/ substance abuse disorder benefits provided under the Banner Plan.  Banner Health is also responsible for monitoring and oversight of the Plan and those responsible for its administration.

18.     Defendant Banner Plan Administration is the plan administrator and is the named fiduciary under ERISA.  BPA is responsible for the operation and maintenance of the Banner Plan.  BPA is also responsible for reviewing appeals from the denial of requested benefits.

19.     Defendant Banner Health Master Health and Welfare Benefits Plan is an employee welfare benefit plan qualified under ERISA. The Banner Plan is a self-funded group plan that provides both medical/surgical benefits and mental health/ substance abuse disorder benefits to covered employees and their dependents.

**JURISDICTION AND VENUE**

20.     Defendants' actions in administering employer-sponsored health care plans, making coverage and benefit determinations under the terms and conditions of the health care plans, and/or processing appeals of coverage and benefit determinations under the terms and conditions of the health care plans are governed by ERISA. This Court has jurisdiction of this case under 28 U.S.C. § 1331 (federal question jurisdiction) and 29 U.S.C. § 1132(e) (ERISA).

21.     Venue is appropriate in this District because the terms of the Banner Plan provide that any actions arising under the Banner Plan must be brought in Maricopa County.  Additionally, Defendants conduct significant operations in this District and are registered with the Arizona Secretary of State to do so.

**OVERVIEW OF AUTISM AND ABA**

**A.     Characteristics and Symptoms of Autism**

22.     Autism or ASD is a complex developmental disability which adversely affects, *inter alia*, verbal and nonverbal communication and social interactions, a child's educational performance, and the overall ability of a person who suffers from the condition to function in society.

23.     Autism is very prevalent. The CDC estimate that an average of 1 in 68 children have an ASD.  *See* http://www.ncsl.org/research/health/autism-and-insurance-coverage-state-laws.aspx. More children are affected by autism than diabetes, AIDS, cancer, cerebral palsy, cystic fibrosis, muscular dystrophy and Down syndrome, combined.

24.     Autism cannot be cured, but it can be treated. Without proper care, treatment, and therapy, autism can be a debilitating and entirely disabling condition, leading people to grow into adulthood without the ability to perform the most basic of human functions and activities of daily living.

25.     The medical community has recognized that autism is one of five pervasive developmental disorders.

26.     Pervasive developmental disorders are a category of neurological disorders characterized by severe impairment in several areas of development, which generally result in abnormal social interaction and communication, severely restricted interests, and highly repetitive behavior.

27.     Autism is the most common of the pervasive development disorders.

28.     Both autistic children and adults with autism typically show extreme difficulties in communication and social interaction.

29.     Autism begins manifesting itself during infancy or early childhood, and can manifest itself in a variety of ways.

30.     The social impairments of autism usually become apparent in early childhood and continue through adulthood.

31.     The characteristic behavior of autistic individuals includes, *inter alia*, impaired social interaction, impaired communication abilities, restricted interests, repetitive behavior, stereotyped movements, resistance to environmental change or change in daily routines, obsessive attachment to objects, decreased motor skills, tantrums, apparent over-sensitivity or under-sensitivity to pain, fearlessness, aloofness, and unusual responses to sensory experiences.

32.     Atypical eating behavior is also prevalent among autistic individuals, including selectivity of food choices and eating rituals.

33.      Autistic individuals may display several forms of repetitive or restricted behavior. These behaviors may include, inter alia, the following:

        a.     Stereotyping: Apparently purposeless movement;

        b.     Compulsive behavior: Intentional, rule oriented behavior;

        c.     Sameness: Resisting change;

d.      Ritualistic behavior: Performing daily activities the same way every time;

e.      Restricted behavior: A limitation in focus or interests; and/or

f.      Self-injury: Behavior that can injure the individual, such as biting.

34.      Autistic individuals may exhibit the characteristic traits of autism in any combination, and in different degrees of severity.

35.      Socially abnormal behavior becomes more pronounced as autistic children become toddlers.

36.      Young autistic children are less likely than non-autistic children to make eye contact, to have social understanding, communicate with others, or respond to emotions.

37.      Mental retardation is also much more prevalent among autistic individuals than neurotypical individuals.

**B.      Applied Behavioral Analysis is a Scientifically Valid Treatment for Autism**

38.      The most common and recognized method of treating autism is Applied Behavioral Analysis or ABA. ABA is a scientifically valid, medically accepted, mainstream treatment that uses behavioral techniques to teach autistic children basic and complex skills that they would not otherwise be able to accomplish.

39.      ABA works by reinforcing appropriate behavior while decreasing or eliminating challenging behavior. ABA fosters basic skills such as sitting in a chair, waiting, attending, motoric imitation, responding to one's name or simple commands, as well as looking, listening and imitating, and complex skills such as reading, conversing and understanding another person's perspective. Without these skills, many diagnosed with autism will experience the debilitating and disabling effects of the disorder.

40.      If delivered competently, ABA intervention helps children with autism make meaningful changes in many areas. Changes do not typically occur quickly and most children require intensive and ongoing instruction that builds on their step-by-step progress.

41.    Among other things, ABA teaches social, motor, and verbal behaviors, as well as reasoning skills.  ABA aids autistic children in leading more independent and active lives. This is especially true for children who receive early intervention.

42.    Studies show that ABA treatment is the most effective approach for treating children with autism.  For example, the United States Surgeon General has said that 30 years of research have "demonstrated the efficacy of applied behavioral methods in reducing inappropriate behavior and increasing communication, learning and appropriate social behavior."

43.    The Association for Science in Autism Treatment endorses ABA as the only treatment modality with scientific evidence supporting its effectiveness.

44.    Intense behavioral intervention for children with autism is the standard of care as recommended by the American Academy of Pediatrics and is an appropriate therapeutic management of autism.

45.    ABA treatment is a scientifically valid component of behavioral intervention.

46.    Reputable ABA treatment and training is available nationwide from facilities managed and staffed by clinicians with considerable education, certifications, and training in ABA techniques.  The programs offered by these facilities are by no means experimental or investigative.

**MENTAL HEALTH PARITY AND ADDICTION EQUITY ACT OF 2008**

47.    The MHPAEA is a federal law that generally prevents group health plans and health insurance issuers that provide mental health or substance use disorder ("MH/SUD") benefits from imposing less favorable benefit limitations on those benefits than on medical/surgical benefits.

48.    The MHPAEA expanded the scope of previous federal legislation on access to mental health coverage and was "designed to end discrimination in the provision of coverage for mental health and substance use disorders, as compared to medical and

surgical conditions." *Coalition for Parity v. Sebelius*, 709 F. Supp. 2d 10, 13 (D.D.C. 2010). Regarding exclusions and limitations, the MHPAEA requires that:

> [T]he treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. *See* 29 U.S.C. § 1185a(a)(3); 42 U.S.C. § 300gg-26; 26 U.S.C. § 9812(a)(3).

49.    The MHPAEA requires a plan to cover all outpatient and inpatient services to treat mental disorders covered by the diagnostic categories listed in the most current version of the Diagnostic and Statistical Manual of Mental Disorders ("DSM"), so long as the services are medically necessary. It further requires that Plan Administrators ensure that treatment limitations on services to treat DSM mental health conditions are no more restrictive than the predominant treatment limitations imposed on substantially all of the Plan's medical and surgical services. 29 U.S.C. § 1185a(3)(A)(ii).

50.    The MHPAEA requires that treatment limitations applicable to mental health or substance use disorder benefits be no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan and prohibits separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. ERISA § 712(a)(3), Public Health Service Act § 2726(a)(3), and Internal Revenue Code § 9812(a)(3).

51.    The Departments of Labor, Health and Human Services, and the Treasury promulgated interim final rules on February 2, 2010 to implement the provisions of the MHPAEA. The interim final rules generally became applicable to group health plans and group health insurance issuers for plan years beginning on or after July 1, 2010, which for calendar year plans is January 1, 2011.

52.    In interpreting the MHPAEA, the U.S. Department of Health and Human Services has said that exclusions based on "medical necessity or medical appropriateness,

13

or based on whether the treatment is experimental or investigative," are treatment limitations for purposes of the MHPAEA.   45 C.F.R. § 146.136(1); 29 C.F.R. § 2590.712(a).

53.   By arbitrarily declaring ABA therapy experimental or investigative and excluding it from coverage, Banner has improperly imposed treatment limitations which effectively excludes all behavioral treatments for ASD in violation of the MHPAEA.

54.   Banner's exclusion of mental health services to treat developmental conditions, while covering medical treatment provided for enrollees with those conditions, violates the MHPAEA, 29 U.S.C. § 1185a, and its implementing regulations, which are incorporated as "terms of the plan" into the Banner Plan under ERISA. By failing to comply with the MHPAEA and the terms of the Plan as modified by the Parity Act, Defendants are systematically and uniformly failing to properly process claims and administer the Banner Plan. The Banner Plan's participants and beneficiaries have not received the benefits to which they are entitled to under the Plan or federal law. The Plan's participants and beneficiaries are being misinformed by Defendants with respect to their right to coverage under the Plan and the MHPAEA.

## FACTUAL ALLEGATIONS

### A.   The Banner Plan

55.   The Banner Plan is a self-funded plan, meaning that the plan sponsor, Banner Health, is responsible for paying or providing reimbursement for plan benefits.

56.   The Banner Plan provides reimbursement for "Covered Services," which is defined as "the expenses incurred by or on behalf of a person" for the specified charges, including "charges made by a Physician or a Psychologist for professional services." Among other things, the Banner Plan provides coverage for the following mental health benefits:

> 14.  Diagnostic evaluation and treatment for crisis intervention or chronic mental and nervous conditions are covered under your Mental Health benefit when Medically Necessary and Appropriate. Outpatient Mental

Health services for marital, family, codependency, sex, interpersonal, eating disorders and gambling counseling are covered.

15.   Treatment for Inpatient care for mental illness, substance abuse or detoxification.

16.  Diagnostic evaluation and medical treatment for learning disorders or developmental disabilities, attention deficit or mental disabilities.

57.   According to the SPD provided to Plaintiffs, the Banner Plan excluded applied behavior analysis from coverage because it "is considered experimental or investigative."

58.   The Banner Plan defines "experimental or investigative," as:

**"Experimental and Investigative"** refers to the use of any treatment, procedure, facility, equipment, drug, device, pharmacological regimens or supply determined by the Claims Administrator, with appropriate professional consultation, to be experimental, of unproved value, redundant in connection with other services or not accepted practice.

A drug, device, medical service, treatment or procedure is Experimental or Investigative:

* * *

• If the Claims Administrator in its sole discretion determines that there exists reliable evidence that the drug, device, medical treatment or procedure is the subject of ongoing phase 1 or phase 2 clinical trials, is the research, experimental study or investigational arm of an ongoing phase 3 clinical trial, or is otherwise under study to determine its maximum tolerated dose, its toxicity, its safety, its efficacy or its efficacy as compared with a standard means of treatment or diagnosis; or

• If the Claims Administrator in its sole discretion determines that there exists reliable evidence with respect to the drug, device, medical treatment or procedure that further studies or clinical trials are necessary to determine its maximum tolerated dose, its toxicity, its safety, its efficacy or its efficacy as compared with a standard means of reliable treatment or diagnosis;

• If the Claims Administrator in its sole discretion determines that based on prevailing medical evidence the drug, device, medical treatment or procedure is Experimental or Investigative.

Reliable evidence shall mean only published reports and articles in the authoritative medical and scientific literature; the written protocol or

15

protocols use by the treating facility or the protocol(s) of another facility studying substantially the same drug, device, medical treatment or procedures: or the written informed consent used by the treating facility or by another facility studying substantially the same drug, device, medical treatment or procedure.

59.    There is a wealth of "published reports and articles in the authoritative medical and scientific literature" that demonstrate ABA to be safe and effective for treating ASD.   Thus, ABA does not fit within the definition of "experimental or investigative" under the Banner Plan.

60.    The denials at issue in this case relate to Banner's ABA Policy. In applying this policy, Defendants did not make a Medical Necessity determination, but only determined that ABA is not covered as "experimental or investigative."

**B.    Defendants' Denial of Coverage for H.E's ABA Therapy**

61.    H.E. was diagnosed with ASD in June 2014.  At the time of the diagnosis, H.E. had suffered severe developmental regression, lost all language, and had no interest in his environment.  Shortly thereafter, Plaintiff's provider recommended ABA therapy. Plaintiff began ABA therapies "with both programming and intervention 30 hours per week."   After one year of ABA therapy, H.E's provider noted that he had "made remarkable progress over the past year.  He is now very verbal and many of his repetitive behaviors have decreased markedly."

62.    Because H.E.'s father was attending medical school at the time of H.E.'s diagnosis, H.E.'s ABA therapy was paid for under AHCCCS up through June 2016.  H.E. was receiving 30 hours per week of ABA therapy and six hours per week of ABA therapy in-home when the coverage under AHCCCS ceased.

63.    Upon initiating coverage under the Banner Plan, Plaintiffs sought coverage for H.E.'s ABA therapy, but were denied.  Cigna denied the request on the grounds that the service was not covered under the Banner Plan.  Cigna stated that ABA therapy was not covered as "non-medical counseling or ancillary services. . . ."  On October 31, 2016,

Jamie Allred, a Senior Benefits Consultant with Banner Health, provided a different reason for the exclusion of ABA therapy:

> We consider the current state of the medical evidence in determining whether to cover a particular service and we also engage an external firm that keeps us apprised of new findings with regard to standard coverage in other ERISA governed plans, including ABA therapy. We also necessarily consider the cost of coverage since, unfortunately, we do not have unlimited resources and must exercise our fiduciary duty to allocate our health dollars prudently. In the case of ABA therapy, it is still considered experimental, the cost is substantial, and very few self-funded employee health plans cover it at this time.

64.    As a result of Defendants' denial of coverage for H.E.'s ABA therapy, Plaintiffs Micah and Laura Etter were forced to pay for the services from their own funds.

65.    On November 18, 2016, after repeated requests from Dr. Etter, Banner admitted that it relies on outside guidelines for determining medical necessity and experimental services.  According to Ms. Allred, "BPA uses MCG guidelines in making medical necessity decisions for non-DME services. The Hayes criteria are used when the service requested involves new technology, since Hayes provides information on the latest research into medical technology."

66.    Notably, as a non-DME service, determination of whether ABA therapy is covered should be determined under the MCG Guidelines, but for Banner's arbitrary designation of ABA therapy as experimental based on the Hayes Report.  The MCG Guidelines find ABA therapy generally accepted and effective treatment for ASD.  MCG introduced guidelines for using ABA therapy to treat ASD in its 19th edition of the guidelines.  It has continued to expand and refine these guidelines in subsequent editions, including its most recent publication of the 21st edition of the guidelines.  In a recent roundtable discussion, MCG's experts touted benefits of ABA therapy – particularly in young children, like H.E.

67.    The Hayes Report relied on by Banner concludes that "Current evidence allows a reasonably confident conclusion that applied behavior analysis (ABA)-based therapies that are intensively applied  .  .  .  are superior to other interventions for

improvement of intelligence/cognitive skills and language skills over the short term."  The Hayes Report does not state that ABA is experimental or investigative and does not cite to any report or article finding ABA therapy ineffective.  The Hayes Report does not involve original research or studies, but rather is a collection of select studies regarding ABA, which are categorized, summarized, and critiqued.  The Hayes Report does not conduct a systematic review of the methodology and make comparisons from one article to another. Instead it summarizes select studies and assigns a subjective rating to the evidence without explaining the methodology underlying its rating system. Importantly, the Hayes Report includes the following disclaimer: "This report is intended to provide research assistance and general information only. It is not intended to be used as the sole basis for determining coverage policy." Despite this warning, Banner based its ABA Policy on the Hayes Report.

68.     In accordance with the exhaustion requirements under the Banner Plan, Plaintiffs filed an appeal with BPA on November 28, 2016. In his appeal, Dr. Etter argued:

> There is substantial research regarding the efficacy of ABA. Time and again, the conclusion is that ABA has been demonstrated to bring about gains in cognition, language skills, and adaptive behaviors in children of all ages with autism. *See, e.g.,* Dawson, G. and Bernier, R., "A Quarter Century of Progress on the Early Detection and Treatment of Autism Spectrum Disorder," 25 DEVELOPMENT AND PSYCHOPATHOLOGY 1455-1472, p. 1462-1463 (2013); *see also*, Ivy, J. and Schreck, K., "The Efficacy of ABA for Individuals with Autism Across the Lifespan," 3-1 CURR DEV DISORD REP 57 - 66 (2016).

> [H.E.]'s providers have determined that ABA is medically necessary to treat his ASD. [H.E.] has been prescribed ABA therapies since 11/18/2014 by Dr. Sydney Rice at Banner University Medical Center. These therapies were prescribed for severe developmental regression and associated complete loss of language skills and environmental disinterest. He had normal brain MRI along with normal EEG awake and asleep. His deficits include behavioral/social developmental, emotional anxiety sensitivity, echolalia, and night terrors, with an ADOS classification of 17.

> Less intensive behavioral treatment or other therapy has been tried and not been successful. There is no equally effective alternative available for reducing severe interfering or disruptive behaviors and increasing pro-social

behaviors, and achieving desired behaviors and improvements in functioning. Applied behavioral analysis services are reasonably expected to result in a measurable improvement in [H.E.]'s skills and behaviors.

69.    On December 23, 2016, BPA issued its opinion upholding the denial of ABA therapy to Plaintiff.  The decision simply stated that "[p]er the SPD, applied behavioral therapy is a non-covered benefit."

70.    On April 15, 2017, Banner Health provided clarification regarding its denial of ABA therapy, stating "the denial was based on the specific exclusion for ABA therapy, which is found on the list of Non-Covered Medical Services in Part 5 of the Banner Plan SPD, a copy of which has been provided to Dr. Etter. (The exclusion for ABA therapy is number 41 on that list.) However, the specific exclusion exists because the Banner Plan has determined that ABA therapy is experimental or investigational." Relying on the Hayes Report, Defendants argue that:

> Our review of the available medical literature confirms ABA therapy is experimental and that the value of ABA therapy remains unproved. . . . [And] the quality of the evidence produced by those studies is low because most of those studies had one or more methodological flaws, for example, low sample sizes, lack of randomization, lack of independent/blinded assessors, and/or the lack of a comparison group.

71.    In making this determination, Defendants failed to acknowledge, address or consider the detailed information submitted by Plaintiffs, including the amply referenced (and far more contemporaneous) studies regarding the general acceptance and efficacy of ABA. Instead, Defendants merely rubber-stamped the denial of coverage based on its ABA Policy.

72.    Nothing in the correspondence with Defendants indicates that the reviewer had any direct training or experience with ABA or related treatments for ASD or with patients like Plaintiff. Indeed, there is no evidence as to the identity or qualifications of the reviewer and whether he or she had any experience with ABA therapy.

73.    When BPA assumes the responsibility for making a final benefit determination as part of the appeal process, it also assumes responsibility for

19

administering the Banner Plan, and making benefit determinations thereunder. Thus, BPA is an ERISA fiduciary.

74.     At all relevant times, Banner Health and BPA were fiduciaries within the scope of ERISA by virtue of their exercise of discretionary authority, control and responsibility over the design, implementation and administration of the Banner Plan.

75.     As ERISA fiduciaries, Defendants were required to discharge their duties consistent with 29 U.S.C. Section 1104, which requires (among other things) that they do so "solely in the interest of the participants and beneficiaries" and for the "exclusive purpose" of providing benefits to participants and their beneficiaries" and paying reasonable expenses of administering the plan. They must do so with "care, skill, prudence, and diligence" and in accordance with the terms of the plans they administer. Defendants violated all of these requirements.

76.     Defendants violated these duties when they prepared and promulgated the ABA Policy, because Defendants relied upon outdated evidence, ignored evidence indicating that ABA was not experimental, and unreasonably concluded that ABA was "experimental or investigational."

77.     Defendants elevated their own interests above the interests of plan participants and beneficiaries, reflecting its conflict of interest when determining whether to cover ABA. By promulgating and applying the ABA Policy, Banner sacrificed the interests of insureds like Plaintiffs so that Banner could artificially decrease the number and value of claims it was required to pay from its own assets.

78.     Defendants' continued reliance on ABA Policy to deny coverage for ABA therapy based on the designation as experimental or investigative is particularly egregious given:  (1) that nearly all states mandate coverage for ABA therapy; (2) the number of studies and peer reviewed papers finding ABA therapy a valid and effective treatment for ASD; and (3) court decisions overturning designations of ABA therapy as experimental or investigative and concluding that ABA therapy is generally accepted in the mental

health community as safe and effective. Defendants are fully aware of these holdings in support of ABA therapy, but choose to ignore them.

79.     Defendants have also wrongfully and unreasonably denied coverage for ABA on other baseless grounds, including intentionally misconstruing the terms of the Plans.

80.     Defendants have failed to provide any explanation or evidence in support of its claim that ABA treatment is experimental, investigative, or otherwise not covered under the Plans.

81.     Defendants' failure to provide evidence in support of its position constitutes a failure to provide full and fair review of the decision to deny benefits, in violation of ERISA [29 U.S.C. § 1133(2)].

82.     By administering the Plans in the manner described in this Complaint, Defendants have failed to exercise the utmost loyalty and care of a prudent person engaged in similar activity under prevailing circumstances, in violation of ERISA.

## CLASS ALLEGATIONS

83.     Plaintiffs bring their claims on their own behalf and on behalf of a "Banner Class," defined as:

> All participants or beneficiaries who now subscribe, have subscribed or will subscribe to a health and welfare plan sponsored by Banner Health that contains an exclusion which as applied denied them coverage for Applied Behavior Analysis ("ABA") therapy for treatment of autism-related spectrum disorder ("autism") on the grounds that the treatment was experimental or investigative.

> Excluded from the class are Defendants, any parent, subsidiary, affiliate, or controlled person of Defendants, as well as officers, directors, agents, servants or employees of Defendants, and the immediate family member of any such person, and any class member who has previously released a claim for benefits under a settlement agreement. Also excluded is any judge who may preside over this case.

84.     The Class meets all requirements of F. R. Civ. P. 23(a) and 23(b)(2) or (b)(3).

85.     The members of the Class are so numerous that joinder of all members is impractical. The identities of the class members are readily identifiable. Banner maintains claims databases that record each instance in which it denies coverage for ABA for treatment of ASD, including those relating to requests for coverage for ABA. ASD is described with a discrete set of diagnostic codes under the Diagnostic and Statistical Manual of Mental Disorders.  Accordingly, the members of the Class can be readily and objectively ascertained through use of records maintained by Defendants.

86.     There exist issues of fact and law common to all members of the Class. The facts that determine the answer to this question do not vary among class members. Common questions of law and fact affecting the class predominate over those questions affecting only individual members. Those common questions include:

a.    whether ABA therapy is an "experimental or investigational service;"

b.    whether BPA and Banner Health are fiduciaries within the meaning of ERISA;

c.    whether Defendants breached their fiduciary duties in applying the uniform exclusion of coverage for ABA therapy as experimental or investigational;

d.    whether Defendants' policy excluding ABA therapy as experimental or investigative was arbitrary and capricious;

e.    whether Defendants have failed to provide a full and fair review as required by ERISA; and

f.    what remedies are available to Plaintiffs and the class as a result of Defendants' implementation of its ABA Policy.

87.     Plaintiffs' claims are typical of the claims of the members of both Classes because Defendants based their denial of coverage on the erroneous conclusion that coverage for ABA for treatment of ASD is experimental or investigational.

88.     Plaintiffs will fairly and adequately protect the interests of the members of the Class, are committed to the vigorous prosecution of this action, have retained counsel

competent and experienced in class action litigation and the prosecution of ERISA claims, and have no interests antagonistic to or in conflict with those of the Class.

89.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications that could establish incompatible standards of conduct for Defendants.

90.     By applying a uniform medical policy and uniformly deficient and woefully outdated rationale for treating ABA therapy services as "experimental or investigational," Defendants have acted and refused to act on grounds that apply generally to the Class.

91.     Common questions of law and fact predominate.

92.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members of the Class is impracticable. Further, because the unpaid benefits denied Class members are small relative to the expense and burden of individual litigation, it would be impossible for the Class members to redress individually the harm done to them.

## <u>COUNT I</u>

### **BREACH OF FIDUCIARY OBLIGATIONS BROUGHT ON BEHALF OF PLAINTIFFS AND THE CLASS**
### **29 U.S.C. § 1132(a)(1)(B)**

93.     Plaintiffs incorporate by reference the preceding paragraphs as though such paragraphs were fully stated herein.

94.     This count is brought pursuant to 29 U.S.C. § 1132(a)(1)(B).

95.     Defendant BPA is a fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it is the Plan Administrator and responsible for making benefit determinations and review of benefit determinations under the Banner Plan.  BPA is also responsible for developing internal practices and policies to facilitate such determinations. Defendant Banner Health is also a fiduciary within the meaning of ERISA. Banner Health is a fiduciary as the Plan Sponsor an entity responsible for payment for services provided

under the Banner Plan.  Banner Health is also responsible for implementing and enforcing the ABA Policy and for monitoring and overseeing administrators appointed under the Banner Plan.

96.    As an ERISA fiduciary, and pursuant to 29 U.S.C. § 1104(a), Defendants are required to discharge their duties "solely in the interest of the participants and beneficiaries" and for the "exclusive purpose of: (i) providing benefits to participants and their beneficiaries: and (ii) defraying reasonable expenses of administering the plan." Fiduciaries must do this with reasonable "care, skill, prudence and diligence" and in accordance with the terms of the plans they administer.  Fiduciaries must conform their conduct to a fiduciary duty of loyalty and may not make misrepresentations to its insureds.

97.    ERISA § 409(a), 29 U.S.C. § 1109(a), states, in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

98.    The terms of an ERISA plan include non-preempted provisions of substantive law, such as the requirements in the MHPAEA. Defendants have failed to comply with the terms of the Plan, which include the requirements of the MHPAEA and its implementing regulations.

99.    Defendants violated their fiduciary obligations by promulgating a policy to exclude ABA therapy as experimental or investigative despite the uncontroverted published evidence and articles concluding that ABA therapy is a scientifically valid and well-established treatment for autism that has been in practice for over twenty years. Defendants further breached their fiduciary duties by providing conflicting reasons for the denial of coverage and attempting to deprive Plaintiffs and class members of all their rights to a full and fair review under the Banner Plan.  In arbitrarily designating ABA therapy as experimental or investigative, Defendants did not act "solely in the interest of

24

the participants and beneficiaries" for the "exclusive purpose" or "providing benefits." Defendants further failed to utilize the "care, skill, prudence, and diligence" of a "prudent man" acting in a similar capacity.  Defendants did not act in accordance with the Banner Plan.

100.    Instead, Defendants elevated their own interests above the interests of plan participants and beneficiaries. By adhering to an incorrect and unsupported policy to designate ABA therapy as experimental or investigative, Defendants artificially decreased the number and value of covered claims thereby benefitting Defendants at the expense of the insureds.

101.    Defendants' repeated denials of ABA therapy to H.E. and other Class members was incorrect, arbitrary and capricious.

102.    As a direct and proximate result of Defendants breaches of fiduciary duty, Plaintiffs and members of the Class have been denied coverage for ABA therapy, suffered losses and are entitled to relief under ERISA against Defendants.

103.    Plaintiffs, on their own behalf and on behalf of the Class, seek the relief identified below to remedy this claim.

## COUNT II

**CLAIM FOR IMPROPER DENIAL OF BENEFITS BROUGHT ON BEHALF OF PLAINTIFFS AND THE CLASS**
**29 U.S.C. § 1132(a)(1)(B)**

104.    Plaintiffs incorporate by reference the preceding paragraphs as though such paragraphs were fully stated herein.

105.    This count is brought pursuant to 29 U.S.C. § 1132(a)(1)(B).

106.    This section provides that a participant or beneficiary may bring action to "recover benefits due to him under the terms of his plan, to enforce his rights under terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

107.    Defendants denied insurance claims for ABA therapy submitted by Plaintiffs and other members of the Class in violation of the terms of the Banner Plan and

federal law.  Defendants denied these claims based on the systematic application of the ABA Policy developed in violation of their fiduciary duties and used to exclude coverage for ABA therapy as experimental or investigative, which does not properly apply to ABA therapy.

108.    Defendants' repeated denials of ABA therapy to H.E. and other Class members was incorrect, arbitrary and capricious.

109.    Plaintiffs and the members of the Class have been harmed by Defendants' improper benefit denials because they were deprived of insurance benefits they were owed.

110.    Plaintiffs, on their own behalf and on behalf of the Class, seek the relief identified below to remedy this claim.

## COUNT III

**CLAIM FOR EQUITABLE RELIEF BROUGHT ON BEHALF OF PLAINTIFFS AND THE CLASS**
**29 U.S.C. § 1132(a)(3)(A)**

111.    Plaintiffs incorporate by reference the preceding paragraphs as though such paragraphs were fully stated herein.

112.    This count is brought pursuant to 29 U.S.C. § 1132(a)(3)(A) only to the extent that the Court finds that the injunctive relief sought to remedy Counts I and/or II are unavailable pursuant to 29 U.S.C. § 1132(a)(1)(B).  Plaintiffs and the Class have been harmed, and are likely to continue to be harmed, by Defendants' breaches of fiduciary duty described above.

113.    Plaintiffs and Class members have the right to full and fair review and proper notice of the reasons for the denial of their claimed benefits under 29 U.S.C. § 1133.

114.    Defendants denied Plaintiffs and Class members their right to a full and fair review of their claims for benefits in multiple ways, including but not limited to: (1) failing to provide any evidence or explanation for its determination that ABA treatment is

experimental or investigative; (2) failing to consider or credit favorable medical evidence an documentation demonstrating the scientific validity and mainstream use of ABA therapy in order to justify reliance on Banner's ABA Policy to deny valid claims; (3) creating internal obstacles and restricting access to the underlying basis for the denial of claims and the ABA Policy; and (4) providing incomplete or inaccurate documentation regarding the denial of claims and terms of the Banner Plan in order to frustrate the processing of claims and Plaintiffs' and Class members' ability to seek all avenues of review under the Banner Plan.

115.    In order to remedy these harms, Plaintiffs and the Class are entitled to enjoin these acts and practices pursuant to 29 U.S.C. § 1132(a)(3)(A).

## <u>COUNT IV</u>

**CLAIM FOR OTHER APPROPRIATE RELIEF BROUGHT ON BEHALF OF PLAINTIFFS AND THE CLASS**
**29 U.S.C. § 1132(a)(3)(B)**

116.    Plaintiffs incorporate by reference the preceding paragraphs as though such paragraphs were fully stated herein.

117.    This count is brought pursuant to 29 U.S.C. § 1132(a)(3)(B) only to the extent that the Court finds that the equitable relief sought to remedy Counts I and/or II are unavailable pursuant to 29 U.S.C. § 1132(a)(1)(B).

118.    Plaintiffs and the Class have been harmed, and are likely to continue to be harmed, by Defendants' breaches of fiduciary duty described above.

119.    Additionally, by engaging in this misconduct, Defendants were unjustly enriched by avoiding paying benefits out of its own funds.

120.    In order to remedy these harms, Plaintiffs and the Class are entitled to appropriate equitable relief, including an appropriate monetary award based on restitution, disgorgement or surcharge, pursuant to 29 U.S.C. § 1132(a)(3)(B).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs demand judgment in their favor against Defendants as follows:

1.      Certify the Class as set forth in this Complaint; appoint named Plaintiffs as class representatives, and designate Bonnett, Fairbourn, Friedman & Balint, P.C. and Arizona Center for Law in the Public Interest as class counsel;

2.      Declare that Defendants violated ERISA and award appropriate benefits;

3.      Order Defendants to make payment, with interest, of unpaid benefits to Plaintiffs and the Class;

4.      Permanently enjoin Defendants from treating ABA therapy as experimental or investigative when provided to treat ASD;

5.      Declare Defendants violated the Banner Plan and that Defendants violated their fiduciary duties under ERISA, and award appropriate equitable relief, including restitution, disgorgement, and surcharges;

6.      Enjoin Defendants from further violations of the terms of the Plan as modified by the MHPAEA and implementing regulations;

7.      Award Plaintiffs disbursements and expenses of this action, including reasonable attorneys' fees, in amounts to be determined by the Court; and

8.      Grant such other relief as is just and proper.

RESPECTFULLY SUBMITTED AND DATED this 1st day of May, 2017.

BONNETT FAIRBOURN
FRIEDMAN & BALINT, P.C.

/s/Andrew S. Friedman
ANDREW S. FRIEDMAN (005425)
afriedman@bffb.com
2325 E. Camelback Road, Suite 300,
Phoenix, AZ 85016
Telephone:   (602) 274-1100

And


ARIZONA CENTER FOR LAW IN THE
  PUBLIC INTEREST

/s/Anne Ronan
ANNE RONAN (0060410
aronan@aclpi.org
514 W. Roosevelt Street
Phoenix, AZ 85003
Telephone: (602) 258-8850

*Attorneys for Plaintiffs and the Proposed
Class*